[Civ. No. 10067.  Second Appellate District, Division Two.—June 29, 1935.]

LEONARD O. ESPINOSA, Respondent, v. CARL W. HAS-LAM, Appellant.

Charles F. Blackstock for Appellant.

Maxwell Nichols and A. W. Robertson for Respondent.

FRICKE, J., *pro tem.*—Action for the death of a son, Raymond, twenty years of age, by reason of the wrongful act of defendant, brought under the authority of section 376 of the Code of Civil Procedure, which provides that "a father, or, in case of his death or desertion of his family, the mother, may maintain an action for the injury or death of a minor child".

This action was commenced February 8, 1934. It appears that on October 3, 1933, Mary Espinosa, the wife of respondent and mother of deceased, commenced a similar action against appellant, predicating her right to do so upon the alleged desertion of the family by the father, and which action was settled by appellant paying to her the sum of $1500. Appellant herein contends that respondent had no legal right to maintain the present action, because he had deserted his family. The test is whether the condition specified in the statute, and which gives the right of action to the mother, existed at the time of the death of the minor regardless of whether a state of desertion existed at some time prior thereto (*Frazzini* v. *Cable*, 114 Cal. App. 444 [300 Pac. 121]) ; and as stated in the cited case and in *American R. Co.* v. *Santiago*, 9 Fed. (2d) 753, involving a statute identical with section 376, the fact that, as to the wife, there may be a desertion, even where it includes a divorce secured by her, does not preclude the father from maintaining an action where at the time of the death or injury of the minor the father was not guilty of

a desertion "of his family", he having maintained a home for and supported and educated the children, including the deceased minor.

The evidence shows that respondent and his wife separated in 1917 and have never since lived together. From 1918 to the end of 1920 the children of this marriage were not living with the mother but were at the city of Anaheim under some arrangement which does not clearly appear but which imposed a financial responsibility for their care upon respondent. Following this period the children came back into the care and custody of respondent and he took care of them until 1925, at which time the deceased went to Eldon until the latter part of 1929, when he returned to his father and lived with him until the latter part of 1932. During this period the mother seems to have written no letters nor made any inquiries concerning her children. In September of 1932 Raymond, the deceased son, apparently took exception to the fact that his father objected to his coming in late at night and to his not disclosing where he went, and left the paternal domicile and adopted that of his mother, with whom he lived up to the time of his death. Under these circumstances it cannot be said that respondent had deserted his family. It may be conceded that the circumstances under which his wife left him in 1917 amounted to such desertion as would be the basis for a divorce had the wife prosecuted such an action, but in view of the care of the children by respondent from 1917 to 1932, the fact that the eighteen year old son voluntarily left his father's home because of limitations placed upon his nocturnal ramblings and went to live with his mother does not establish "desertion of his family" by respondent.

Appellant also urges that since respondent did not begin this action until three months after he had knowledge of the settlement made by appellant of the action brought by the mother, and respondent had ratified such settlement, the latter lost whatever right he might have to maintain this action. But the evidence as to the asserted ratification is conflicting, and we cannot therefore make such assumption. The point is not supported by argument nor by authority, and we do not believe it is meritorious.

The record, however, fails to support a judgment in the sum of $1500, awarded herein. Beyond the liability of $11 for a hospital bill and a balance of $265 due on the funeral bill, the basis for the judgment is limited to evidence

that, while living with his father, deceased had earned between $3.50 and $4.50 a day when he worked. But there is no evidence as to the number of days he did work, and there is evidence from a brother of deceased that the latter, during the year preceding his death, earned very little money. This state of the record, coupled with the fact that the deceased was approximately twenty years old at the time of his death, falls far short of supporting the finding of the court that the damages suffered by the father were sufficient in amount to sustain a judgment in the sum of $1500.

The judgment is reversed.

Stephens, P. J., concurred.

CRAIL, J., Concurring.—I concur in the judgment but assign different and additional reasons. In 1917 the respondent, the father of the decedent, pleaded guilty to assault and battery against his wife and was convicted of the crime. This cruelty made it impossible for her to live with him and they never lived together again. That was desertion on his part. (Civ. Code, sec. 98; *White* v. *White,* 86 Cal. 219 [24 Pác. 996]; *Benton* v. *Benton,* 122 Cal. 395 [55 Pac. 152]; *Grierson* v. *Grierson,* 156 Cal. 434 [105 Pac. 120, 134 Am. St. Rep. 137]; 9 Cal. Jur. 667, 668.) Similarly in the case of *Delatour* v. *Mackay,* 139 Cal. 621, 622 [73 Pac. 454], where the husband's habitual intemperance amounted to extreme cruelty, the court said: "These facts clearly establish desertion of the family within the meaning of the code, and the action was therefore properly prosecuted by the wife alone." The court records show that the respondent was so convicted. The appellant Haslam, not being a clairvoyant, relied upon the records. He could not foresee that the respondent would claim that while respondent pleaded guilty to the assault and battery he really was *not* guilty; and appellant did not have imagination sufficient to conceive that a trial court seventeen years later would take as *substantial* evidence against an innocent third party the oral testimony of respondent, made in his own interest, that he was not guilty.

" . . . section 376, *supra,* has reference to the conditions existing at the time of the death of the minor child . . . " (*Frazzini* v. *Cable, supra.*) At the time of the death of the minor child in the instant case the child was living with his mother and had been living with her for more than a year,

which selection he had a right to make, being over fourteen years of age. The boy was not only living with his mother but was contributing to her support. During all of said year he had not been supported by his father; neither had he contributed to his father's support. When the boy was killed the father refused to pay the funeral bills. The mother took this responsibility and paid at least a part of them.

All of the above facts are undisputed, and I believe that within the meaning of section 376, and for the purposes of this action, the mother and the minor child whose death was involved constituted "his family"; that the father had deserted his family; that the mother was entitled to maintain the action for the death of her minor child; and that the appellant should not be required to pay a second time. I believe that there was no substantial evidence to support the finding of the trial court with regard to the lack of desertion.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 24, 1935, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 26, 1935.